# IN THE COURT OF APPEALS OF IOWA

No. 16-0931
Filed November 9, 2016

**IN THE INTEREST OF L.S.,**
**Minor child,**

**R.L., Mother,**
    Petitioner-Appellant,

**P.S., Father,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Monroe County, William S. Owens, Associate Juvenile Judge.

The mother of a child appeals an order denying her petition to terminate the parental rights of the child's father. **AFFIRMED.**

Andrea K. Buffington of Ranes Law Firm, West Des Moines, for appellant.

Steven Gardner of Denefe, Gardner & Zingg, P.C., Ottumwa, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

The mother of a child, born in 2005, appeals an order denying her petition to terminate the parental rights of the child's father.  She contends (1) she proved the father abandoned the child and (2) termination was in the child's best interests.

## I.     Abandonment

Iowa Code section 600A.8(3)(b) (2015) states:

> If the child is six months of age or older . . . a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Our de novo review of the record reveals the following facts.  The mother and father divorced in 2006.  The mother was granted physical care of the child and the father was afforded visitation.  He was ordered to pay the mother $425 per month in child support.   The father made these payments, and it is undisputed he was current on his child support obligation as of the termination hearing.

The father testified he regularly visited the child following entry of the dissolution decree.  In approximately "2008-2009," the juvenile court restricted

his contact based on his use of illegal drugs. By 2010, juvenile court involvement ended, as did the restrictions. The father resumed unrestricted visits until mid-2011, when the mother, "suspect[ing] drug use," told the father she "wanted a negative drug test" before she would allow further contact with the child. She imposed the requirement unilaterally—without a juvenile or district court order. The father did not see his child for the ensuing seven or eight months.

In 2012, the mother allowed the father contact with the child after she learned he had participated in a drug rehabilitation program. Three months later, she re-imposed the requirement of a clean drug test.

The father had no contact with the child from May 2012 through the termination hearing three years and nine months later. He communicated with the mother toward the end of 2014. The mother acknowledged his text message "was his way of reaching out to [her] to see [the child]." She did not respond.

The mother also did not inform the father of the child's upcoming heart surgery. In early 2015, the father learned of the surgery through someone else and went to the hospital to visit the child. However, the mother had discussed her "concerns about" contact between father and child with the cardiologist performing the surgery and signed a paper restricting visitors. With this background, the cardiologist recommended against a visit, and the father heeded the recommendation and left the hospital. He subsequently filed a contempt application against the mother but later dismissed it.

Meanwhile, the mother filed an application to modify the dissolution decree and filed the termination petition underlying this appeal. The modification application was pending at the time of trial on the termination petition.

The district court concluded the mother "failed to prove by clear and convincing evidence that [the father] . . . abandoned [the child]." The court dismissed the petition to terminate parental rights, reasoning as follows:

> There is . . . no dispute in the record that [the father] has not visited [the child] at least monthly, nor is there a dispute that he failed to have regular communication with [the child] or [the mother]. Also, there is no dispute [the father] did not live openly with [the child] for a period of six months prior to the commencement of this action. There is, however, evidence in the record to suggest [the mother's] unilateral decision to [require] drug testing as a precondition for visits dissuaded [the father] from asking to have contact with [the child]. [The father] did, after he was prevented from seeing [the child] following heart surgery in February 2015, seek to have [the mother] found in contempt, but that proceeding was dismissed after [the mother] filed a motion to have the district court modify the custody and visitation arrangements in their divorce decree. In the midst of that ongoing dispute (which has yet to be resolved by the district court) [the mother] filed this action to terminate [the father's] parental rights.
>
> . . . .
>
> The evidence is clear [the father] has not had face-to-face contact with [the child] since May 2012, but based on the circumstances presented, including [the father's] substantial contributions toward the [child's] support, [the mother's] independent decision to suspend [the father's] visits, the yet unresolved modification in the dissolution proceeding, and [the father's] very credibly expressed and sincere regret at his history of drug use and its impact on [the child], the record falls short of establishing that [the father] ever had the intent to abandon [the child].

We agree with the court's reasoning. The father visited the child pursuant to the provisions in the dissolution decree until the juvenile court intervened and, after that, until the mother unilaterally imposed conditions on visits. He developed a relationship with the child, which he characterized as "good." The mother impeded this relationship without court authorization. Under these circumstances, termination of the father's parental rights was not warranted.

## II. Best Interests

"Once the court has found a statutory ground for termination under a chapter 600A termination, the court must further determine whether the termination is in the best interest of the child." *In re A.H.B.*, 791 N.W.2d 687, 690 (Iowa 2010). The district court addressed this requirement as follows:

> [The father] has not had contact with his son since May 2012, but [the child] is still a young child and his relationship with his father can be restored if all the parties work honestly and diligently toward reintegrating [the father] into [the child's] life. To that end, [the mother] previously filed an action to modify the custody and visitation provisions of the parties' dissolution decree. That action affords the district court an opportunity to modify previously entered orders regarding [the father's] visitation with [the child], and also allows that court to fashion its own appropriate restrictions (if any) on [the father's] visits in light of his admitted history of substance abuse. . . . There is . . . insufficient evidence presented to show that termination would be in [the child's] best interests.

We concur in this assessment. We affirm the district court's denial of the mother's termination petition.

**AFFIRMED.**